GAUT v SOUTHFIELD

1. MUNICIPAL CORPORATIONS—SEWERS—SPECIAL ASSESSMENTS—STATUTES—ORDINANCES—COUNTIES.

Statutes and a Southfield city ordinance establish three distinct methods of imposing special assessments for sewer construction: (1) a sewer may be constructed by the county, directly through its Department of Public Works, in which case the procedure for imposing the special assessment is controlled by statute; (2) a sewer may be constructed by a city itself, in which case the imposition of a special assessment is governed by the procedures outlined in the city's ordinance, or (3) finally, a sewer can be constructed by a county under contract with a city (MCLA 123.742, 123.743, 123.752, 123.754; Southfield ordinance No. 147).

2. MUNICIPAL CORPORATIONS—SEWERS—SPECIAL ASSESSMENTS—HEARING—NOTICE—OBJECTIONS.

Property owners receive notices of two hearings before the Department of Public Works when a sewer is constructed by a county directly through its Department of Public Works; the purpose of the first hearing is to hear objections to the improvement and to the special assessment district; the purpose of the second hearing is to air objections to the assessment roll and objections to the roll must be made in writing (MCLA 123.752, 123.754).

3. MUNICIPAL CORPORATIONS—SEWERS—ORDINANCES—HEARING—OBJECTIONS.

Two distinct public hearings are required when a sewer is constructed pursuant to a Southfield city ordinance; the first hearing affords interested parties the opportunity to object to the making of the improvement and to the proposed assessment district and the second hearing is limited to objections, which must be in writing, to the assessment roll; the ordinance permits 60% of the property owners to veto the making of the improvement (Southfield ordinance No. 147).

REFERENCE FOR POINTS IN HEADNOTES
[1–10] 56 Am Jur 2d, Municipal Corporations §§ 569–574.

4. MUNICIPAL CORPORATIONS—COUNTIES—SEWERS—STATUTES—SPECIAL ASSESSMENTS.

Procedure for special assessments where a sewer is constructed by a county under contract with a city, is controlled by a statute, which does not expressly require any hearings but does, however, require that proceedings in respect to the special assessment roll shall be in accordance with provisions governing special assessments in the municipality and specifies that objections to the special assessment district may be advanced at the hearing upon the special assessment roll; the legislative purpose to eliminate a formal hearing to air objections to the making of the improvement itself is clear (MCLA 123.743).

5. CONSTITUTIONAL LAW—HEARING—NECESSITY—SEWERS.

There is no constitutional right to a hearing on the necessity of constructing a public sewer.

6. MUNICIPAL CORPORATIONS—SEWERS—SPECIAL ASSESSMENTS—REMONSTRANCE.

Southfield city ordinance provision which gives the right of a remonstrance by petition of 60% of the affected property owners—a veto power—operates to avoid a special assessment by eliminating the improvement itself (Southfield ordinance No. 147).

7. MUNICIPAL CORPORATIONS—COUNTIES—SEWERS—STATUTES—CHARTERS—ORDINANCES.

By statute, the decision-making power as to whether the improvement is to be constructed is placed in the governing body of the city, where a sewer is proposed to be constructed by a county under contract with a city, and the statute providing for that method of sewer construction incorporates the city charter and ordinances adopted thereunder only insofar as they govern the procedures of approving the special assessment roll (MCLA 123.742, 123.743).

8. CONSTITUTIONAL LAW—EQUAL PROTECTION—MUNICIPAL CORPORATIONS—SEWERS—SPECIAL ASSESSMENTS—HEARING ON NECESSITY.

Claim that if property owners affected are not entitled to a hearing on the necessity for an improvement then the entire special assessment procedure for sewer construction is invalid as violating the equal protection clauses of the state and Federal Constitutions is without merit (US Const, Am XIV; Const 1963, art 1, § 2).

9. CONSTITUTIONAL LAW—MUNICIPAL CORPORATIONS—SEWERS—STATUTES—CLASS LEGISLATION.

Statutes providing for different methods of sewer construction do not divide people into classes arbitrarily or otherwise; the statutes merely provide alternate methods of constructing public improvements (MCLA 123.742, 123.743, 123.752, 123.754).

10. MUNICIPAL CORPORATIONS—SEWERS.

The advantages and disadvantages of the different permitted approaches for sewer construction are for the governing body of the city to weigh (MCLA 123.742, 123.743, 123.752, 123.754; Southfield ordinance No. 147).

Appeal from Court of Appeals, Division 2, V. J. Brennan, P. J., and J. H. Gillis and T. M. Burns, JJ., affirming Oakland, James S. Thorburn, J. Submitted June 7, 1972. (No. 7 June Term 1972, Docket No. 53,645.) Decided August 30, 1972.

34 Mich App 646 affirmed.

Complaint by Merlin Gaut, and others as a class, against the City of Southfield for a declaratory judgment invalidating a special assessment for sewer construction. Summary judgment for defendant. Plaintiffs appealed to the Court of Appeals. Affirmed. Plaintiffs appeal. Affirmed.

*James E. Wells,* for plaintiffs.

*Sigmund A. Beras,* City Attorney, for defendant.

T. E. BRENNAN, J. This action was commenced in the circuit court for Oakland County for a declaratory judgment invalidating a special assessment for sewer construction.

The gist of the action is that plaintiff property owners, and others similarly situated, have been denied *the right to veto the construction of the sewer, pursuant to an ordinance of the City of Southfield, and further that they have been denied*

the opportunity to be heard before the City Council on the necessity for the improvement as required by ordinance.

Finally, plaintiffs claim that if they are not entitled to such hearing, the entire special assessment procedure is invalid as violating the equal protection clauses of state and Federal Constitutions.

Both parties sought summary judgment in circuit court. Defendant prevailed, and the summary judgment in defendant's favor was affirmed by the Court of Appeals.

The sewer involved is formally designated Sanitary Lateral System #7. Construction of the sewer has long since been completed, and presumably, the sewer is now in operation.

There is no dispute that the sewer was constructed by the County of Oakland through its Department of Public Works, under contract with the City of Southfield. Statutory authority for such an arrangement is contained in MCLA 123.742; MSA 5.570(12); and MCLA 123.743; MSA 5.570(13). These statutes provide:

"Sec. 12. (1) The county operating under this act and any 1 or more municipalities including the county itself may enter into a contract or contracts for the acquisition, improvement, enlargement or extension of a water supply, a sewage disposal or a refuse system or the making of lake improvements and for the payment of the cost thereof by such contracting municipalities, with interest, over a period not exceeding 40 years.

"(2) In any such contract or contracts each contracting municipality shall pledge its full faith and credit for the payment of its obligations thereunder and if the municipality has taxing power, shall each year levy a tax, which shall not be within any statutory or charter limitation, in an amount which, taking into consideration estimated delinquencies in tax collections, will be

sufficient for the prompt payment of that part of the
contract obligations as shall fall due before the follow-
ing year's tax collection. For the payment of contrac-
tual obligations incurred pursuant to this act, a town-
ship shall levy a tax only on the taxable property in the
unincorporated areas of the township unless the town-
ship and a village have agreed that a part of the
capacity in the county system allocated to the township
by contract pursuant to this act will be used to serve
areas in a village located wholly or partly within the
township and the village has not itself agreed to pur-
chase such capacity in the county system. If any con-
tracting municipality at the time of its annual tax levy
shall have on hand in cash any amount pledged to the
payment of the current obligations for which the tax
levy is to be made, then the annual tax levy may be
reduced by that amount. For the purpose of obtaining
such credit, funds may be raised by any municipality in
any 1 or more of the following methods:

"(a) By service charges to users of the system or lake
improvements.

"(b) By special assessment upon lands benefited.

"(c) By the exaction of charges for the connection of
properties, directly or indirectly, to the system.

"(d) By setting aside any state collected funds dis-
bursed to the municipality and usable therefor.

"(e) By setting aside any other available moneys.

"The foregoing tax requirements when applied to a
county or township shall be subject to any constitu-
tional tax limitation or any lawful increase thereof.
Any municipality may agree to raise all or any part of
its contract obligation by any 1 or more of the foregoing
methods which may be available. The various powers in
this act granted to any municipality shall be exercised
by its governing body. Any contract heretofore entered
into which complies with the provisions of this act, as
now amended, is hereby validated.

"Sec. 13. When the board of public works shall deter-
mine to spread all or part of the cost of a project to a
special assessment district, it shall proceed as provided
in chapter 2 of this act. If a municipality other than a
county operating under this act elects to raise moneys

to pay all or any portion of its share of the cost of a project by assessing the same upon benefited lands, its governing body shall so determine by resolution and fix the district therefor. The governing body shall then cause a special assessment roll to be prepared and thereafter the proceedings in respect to the special assessment roll and the making and collection of the special assessments thereon, shall be in accordance with the provisions of the statute or charter governing special assessments in the municipality, except that the total assessment may be divided into any number of installments not exceeding 30, and any person assessed shall have the right at the hearing upon the special assessment roll to object to the special assessment district previously established in which event due consideration shall be given to the objections."

Chapter 2 of the Act, referenced in section 13 above, provides in part as follows:

"Sec. 22. The board of public works shall cause to be prepared by a registered engineer, plans showing the project and an estimate of the cost thereof. Upon receipt of such plans and estimate the board of public works shall order the same to be filed with the director of public works and if it shall desire to proceed with the said project, it shall by resolution tentatively so declare and also tentatively designate the special assessment district against which the cost of the project is to be assessed. The board of public works shall then fix a time and place when and where it will meet and hear any objections to the improvement and to the special assessment district therefor, and shall cause notice of the hearing to be given by the publication thereof twice prior to the hearing in a newspaper circulating in the special assessment district, the first publication to be at least 10 days prior to the time of the hearing. The notice shall state that the plans and estimate are on file with the director of public works for public examination and shall contain a description of the proposed special assessment district. At the time of the hearing, or at any adjournment thereof which may be without further notice, the board of public works shall hear any objec-

tions to the improvement and to the special assessment district. The board of public works may revise, correct, amend or change the plans, the estimate of cost or the special assessment district. No final action shall be taken in respect to the addition of any property to the district or to increasing the estimated cost in excess of 10% of the original estimate, until after a new hearing upon notice given as above provided." MCLA 123.752; MSA 5.570(22).

"Sec. 24. When any special assessment roll shall have been made the same shall be filed in the office of the director of public works. Before confirming the assessment roll the board of public works shall fix a time and place when it will meet and review the same and hear any objections thereto, and shall cause notice of the hearing and of the filing of the assessment roll, to be published twice prior to the hearing in a newspaper circulating in the special assessment district, the first publication to be at least 10 days before the hearing. The hearing may be adjourned from time to time without further notice. Any person objecting to the assessment roll shall file his objection thereto in writing with the director of public works before the close of the hearing or within such further time as the board may grant. After the hearing the board of public works may confirm the special assessment roll as reported to it or corrected by it, or may refer it back for revision, or may annul it and direct a new roll to be made. When a special assessment roll shall have been confirmed the secretary of the board shall indorse thereon the date of confirmation. After the confirmation the special assessment roll and all assessments thereon shall be final and conclusive unless attacked in a court of competent jurisdiction within 30 days after the date of confirmation." MCLA 123.754; MSA 5.570(24).

The ordinance of the defendant city governing special assessments is No. 147. It contains these provisions:

"Section 3. To Initiate Special Assessment Projects:
"Proceedings for the making of local public improve-

ments within the City may be commenced by resolution of the Council, on its own initiative or by an initiatory petition signed by property owners whose aggregate property in the special assessment district was assessed for not less than 60% of the total assessed value of the privately owned real property located therein, in accordance with the last preceding general assessment roll; Provided However, that in the case of special assessments for paving or similar improvements which are normally assessed on a frontage basis against abutting property, such petitions shall be signed by the owners of not less than 60% of the frontage of property to be assessed.

"Such petitions shall contain in addition to the signatures of the owners, a brief description of the property owned by the respective signers thereof.

"Such petitions shall be verified by the affidavit of one or more of the owners or by some person or persons with knowledge that said signers are such owners and that such signatures are genuine.

"Petitions shall be addressed to Council and filed with the City Clerk. Petitions containing the signatures as required by this Section 3 shall be mandatory upon the Council.

"All petitions shall be circulated and signed on blank forms furnished by the City.

"All petitions shall be referred by the City Clerk to the City Administrator. The City Administrator shall check the petitions to determine whether they conform to the foregoing requirements and shall report his findings to the City Council.

"Section 4. Survey and Report:

"Before the Council shall consider the making of any local public improvement, the same shall be referred by resolution to the City Administrator directing him to prepare a report which shall include preliminary plans and estimates of cost, an estimate of the life of the improvement, a description of the assessment district or districts and such other pertinent information as will permit the Council to consider the cost, extent, and necessity of the improvement proposed and what part or proportion thereof should be paid by special assess-

ments upon the property especially benefited and what
part, if any, should be paid by the City at large. The
Council shall not finally determine to proceed with the
making of any local public improvement until such
report of the City Administrator has been filed, nor
until after a public hearing has been held by the
Council for the purpose of hearing objections to the
making of such improvement.

"Section 5. Determination on the Project, Notice:

"After the City Administrator has presented the re-
port required in Section 4 for making any local public
improvement as requested in the resolution of the
Council, and the Council has reviewed said report, a
resolution may be passed determining the necessity of
the improvement; setting forth the nature thereof; pre-
scribing what part or proportion of the cost of such
improvement shall be paid by special assessment upon
the property especially benefited; determination of ben-
efits received by affected properties and what part, if
any, shall be paid by the City at large; designating the
limits of the special assessment district to be affected;
placing the complete information on file in the office of
the Clerk where the same may be found for examina-
tion; and directing the Clerk to give notice of public
hearing on the proposed improvement at which time
and place opportunity will be given interested persons
to be heard. Such notice shall be given by one publica-
tion in a newspaper published or circulated within the
City and by first class mail addressed to each person
having an interest in property to be assessed as shown
by the last general tax assessment roll of the City, said
publication and mailing to be made at least fourteen
(14) full days prior to the date of said hearing. The
hearing required by this section may be held at any
regular, adjourned or special meeting of the Council.

"Section 6. Objections to Improvement:

"If, at or prior to such meeting of the Council, not
less than sixty (60%) percent of the number of owners
of private real property to be assessed for any improve-
ment shall object in writing to the original determina-
tion of necessity of the proposed improvement, the
improvement shall not be made.

"Section 7. Hearing on Necessity:

"At the public hearing on the proposed improvement, all persons interested shall be given an opportunity to be heard, after which the Council may modify the scope of the local public improvement in such a manner as they shall deem to be in the best interest of the City as a whole; provided, that if the amount of work is increased or additions are made to the district, then another hearing shall be held, pursuant to notice prescribed in Section 5. If the determination of the Council shall be to proceed with the improvement, a resolution shall be passed approving the preliminary plans, assessment district, and estimates of cost, directing the Engineer to prepare construction plans and specifications, and directing the Assessor to prepare a special assessment roll in accordance with the Council's determination, and report the same to the Council for confirmation. The Council shall approve construction plans and specifications prior to the meeting to review the special assessment roll, as provided in Section 12.

*    *    *

"Section 12. Meeting to Review Special Assessment Roll—Objections in Writing:

"Upon receipt of such special assessment roll, the Council, by resolution, shall accept such assessment roll and order it to be filed in the office of the Clerk for public examination; shall fix the time and place the Council will meet to review such special assessment roll, and direct the Clerk to give notice of a public hearing for the purpose of affording an opportunity for interested persons to be heard. Such notice shall be given by one publication in a newspaper published or circulated within the City and by first class mail addressed to each person having an interest in property to be assessed as shown by the last general tax assessment roll of the City, said publication and mailing to be made at least fourteen (14) full days prior to the date of said hearing. The hearing required by this section may be held at any regular, adjourned, or special meeting of the Council. At this meeting, all interested persons or parties shall present in writing their objections, if any, to the assessments against them. The Assessor shall be

present at every meeting of the Council at which a special assessment is to be reviewed."

These enactments establish three distinct methods of imposing special assessments for sewer construction:

(1) A sewer may be constructed by the county directly through its Department of Public Works, in which case the procedure for imposing the special assessment is controlled by sections 22 and 24, quoted above.

Under this method, the property owners receive notices of two hearings before the Department of Public Works. The first hearing is required by section 22. Its purpose is to hear objections *to the improvement* and *to the special assessment district.* A second hearing is required under section 24. The purpose of the second hearing is to air objections *to the assessment roll.* Objections to the roll must be made in writing.

(2) A sewer may be constructed by the city itself, in which case the imposition of a special assessment is governed by the procedures outlined in the ordinance. These are similar to the procedures outlined in sections 22 and 24, but they are not identical.

The two methods have these aspects in common; both require two distinct public hearings. In both instances, the first hearing affords interested parties the opportunity to object to the *making* of the improvement and to the proposed assessment *district.*

In both instances, the second hearing is limited to objections *to the assessment roll.* The language of the ordinance is, " * * * objections, if any, to the assessments against them."

In both instances, objections to the roll must be made in writing.

The city's assessment procedure differs from the county's in one important particular. Section 6 of the ordinance permits 60% of the property owners to veto the *making of the improvement.*

(3) Finally, a sewer can be constructed by the county under contract with the city. This method is outlined in sections 12 and 13.

In these cases the theory of the special assessment is somewhat different. The act requires the levy on an annual sewer tax to pay for the sewer. It then provides, by way of condition subsequent, that the sewer tax need not be levied if the city shall have enough money on hand to pay the annual installment on the sewer installation contract. It provides several methods to accumulate such funds, one of which is by a special assessment upon benefited lands.

Procedure for such assessment is controlled by section 13 of the Act. It does not expressly require any hearings.

Section 13 does, however, require that proceedings in respect to the special assessment roll shall be in accordance with provisions governing special assessments in the municipality.

It then specifies that objections to the special assessment district may be advanced " * * * at the hearing upon the special assessment roll * * * ."

The legislative purpose to eliminate a formal hearing to air objections to *the making of the improvement itself* is clear.

There is no constitutional right to a hearing on the necessity of constructing a public sewer. *Roberts v Smith,* 115 Mich 5 (1897), states, pp 7–8:

"We are not aware of any cases that hold that all

persons subject to assessments for drains must have notice of, and a hearing upon, the question of the public necessity. If the Constitution requires it, the same requirement would appear to be applicable to other public improvements, such as highways, waterworks, public buildings, and the like; and it might be plausibly urged that all taxation would be subject to the same right."

The right of remonstrance by petition of 60% of the affected property owners—which we have called a veto power—operates to avoid the special assessment by eliminating the improvement itself.

Both the public hearing required by section 5 of the ordinance and the property owners' veto granted in section 6 of the ordinance go to the threshold question of whether the improvement is to be constructed. In cases where it is proposed to contract with the county, section 12 of the Act places that decision-making power in the governing body of the city. Section 13 of the Act incorporates the city charter and ordinances adopted thereunder only insofar as they govern the procedures of approving the special assessment roll.

The issue of equal protection is without merit. The statutes quoted do not divide people into classes arbitrarily or otherwise. The statutes merely provide alternate methods of constructing public improvements.

The advantages and disadvantages of the different permitted approaches are for the governing body of the city to weigh.

Affirmed. Costs to the appellee.

T. M. KAVANAGH, C. J., and ADAMS, T. G. KAVANAGH, SWAINSON, and WILLIAMS, JJ., concurred with T. E. BRENNAN, J.

BLACK, J., concurred in the result.