RENNE v WATERFORD TOWNSHIP

1. STATUTES—ORDINANCES—SEWAGE DISPOSAL—CONSTITUTIONAL LAW
   —TITLE-OBJECT REQUIREMENT.
   Legislation enacted by 1972 PA 288 which empowers a govern-
   mental agency to enact an ordinance requiring connection of
   any structures in which sanitary sewage originates to any
   available public sewage disposal system does not violate the
   constitutional requirement that the object of a law be expressed
   in its title (Const 1963; art 4, § 24; MCLA 123.281 *et seq.;* MSA
   5.2769[151] *et seq.).*

2. CONSTITUTIONAL LAW—EMINENT DOMAIN—ZONING—REGULATORY
   ORDINANCES—SEWAGE DISPOSAL—VESTED RIGHTS—RIGHT OF
   COMPENSATION.
   No right of compensation inures to property owners who are
   constrained by ordinance for reasons of public health and
   welfare to abandon a functional septic tank in favor of a public
   sewer system; the zoning theory of vested rights, which would
   allow the continued use of septic tanks as a nonconforming use,
   does not apply to a regulatory ordinance protecting the public
   health, safety and welfare.

3. TOWNS—TOWNSHIPS—ORDINANCES—CRIMINAL SANCTIONS—MAXI-
   MUM PENALTY—STATUTES.
   A charter township has the power to enact ordinances in further-

REFERENCES FOR POINTS IN HEADNOTES
[1, 9–11] 46 Am Jur 2d, Drains and Drainage Districts §§ 2–5.
[2] 26 Am Jur 2d, Eminent Domain §§ 43, 44.
  56 Am Jur 2d, Municipal Corporations, Counties, and Other Politi-
  cal Subdivisions § 573.
  Establishment or extension of sewer as a public use or purpose for
  which power of eminent domain may be exercised. 169 ALR 576.
[3] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
  Political Subdivisions § 415.
[4] 56 Am Jur 2d, Municipal Corporations, Counties, and Other
  Political Subdivisions, § 506.
[5] 8 Am Jur 2d, Drains and Drainage Districts, §§ 11, 20, 24.
[6, 7] 73 Am Jur 2d, Summary Judgment § 15.
[8] 16 Am Jur 2d, Constitutional Law §§ 496–501, 551.

ance of the public welfare and to impose criminal sanctions for violations of those ordinances; however, the maximum penalty imposed for violation of a charter township ordinance may not exceed a fine of $100 or imprisonment for 90 days or both (MCLA 42.15, 42.21; MSA 5.46[15], 5.46[21]).

4. TOWNS—COUNTIES—TOWNSHIPS—SEWAGE DISPOSAL—CONTRACTS WITH COUNTIES—REFERENDUMS—PUBLIC HEARINGS—STATUTES.

A charter township may enter into a contract with a county for the financing and construction of a township sewer system without either submitting the question to a popular vote or affording property owners a hearing on the matter; a township so contracting is required to pledge its full faith and credit for payment of its contractual obligations, and the debt may be satisfied by a tax levy or by other statutorily specified means (MCLA 123.742[1], [2]; MSA 5.570[12] [1], [2]).

5. MUNICIPAL CORPORATIONS—MUNICIPAL IMPROVEMENTS—CONTRACTS WITH COUNTIES—PUBLIC HEARINGS.

The decision of a municipality whether or not to contract with a county for the purpose of municipal improvements rests with the governing body; there is no express requirement of public hearings on the necessity for the improvements.

6. JUDGMENT—SUMMARY JUDGMENT—NONMOVING PARTY—COURT RULES.

A trial court may grant summary judgment in favor of a nonmoving party (GCR 1963, 117.3).

7. COURTS—LEGISLATION—JUDGMENT—CHALLENGE TO STATUTE—SEPTIC TANKS.

Courts should beware of supplanting a legislative judgment with their° own where the legislative conclusion is debatable; therefore, a summary judgment was properly granted in favor of a nonmoving defendant where the plaintiff's motion for summary judgment was apparently based upon the absence of material fact and challenged a legislative finding, as expressed in statute, on the dangers of septic tanks.

8. CONSTITUTIONAL LAW—EQUAL PROTECTION—LEGISLATIVE CLASSIFICATION—RULE OF REASON.

Both the classification itself and the test used to scrutinize the classification are to be weighed against a rule of reason where a legislative classification is attacked on equal protection grounds.

9. CONSTITUTIONAL LAW—EQUAL PROTECTION—SEWAGE DISPOSAL—
   EXPERIMENTAL LEGISLATION—STATUTES.

   A 1972 enactment enabling municipalities to require connection
   to a sanitary sewer system of structures from which sewage
   originates and which are within 200 feet of the system is of
   sufficiently recent vintage to be considered "experimental"
   legislation, subject to the traditional equal protection test,
   which is that a statutory discrimination will not be set aside if
   any state of facts reasonably may be conceived to justify it
   (MCLA 123.281 *et seq.;* MSA 5.2769[151] *et seq.).*

10. STATUTES—EXPERIMENTAL LEGISLATION—PIECE-MEAL LEGISLATION.

    The Legislature need not adopt an all-or-nothing approach in an
    area where there is a perceived need for experimentation; it
    may instead proceed in piece-meal fashion.

11. CONSTITUTIONAL LAW—EQUAL PROTECTION—STATUTES—SEWAGE
    DISPOSAL—REASONABLE LIMIT.

    A statute which requires that only those structures located
    within 200 feet of an available public sewer line are required to
    connect to the line does not violate equal protection; the 200-
    foot limit is reasonable (MCLA 123.282[1]; MSA 5.2769[152][1]).

Appeal from Oakland, William R. Beasley, J.
Submitted December 7, 1976, at Lansing. (Docket
No. 24398.) Decided March 1, 1977.

Complaint by Geraldine Renne, for herself and
as representative of a class of persons similarly
situated, against the Township of Waterford, Oak-
land County, challenging the constitutionality of a
township ordinance regulating the township sew-
age disposal system. Summary judgment for de-
fendant. Plaintiff Renne appeals, and several mem-
bers of the class intervened as plaintiff-appellants.
Affirmed in part, reversed in part.

*Renne & Welter,* for plaintiff Geraldine Renne.

*Roger S. Canzano,* for intervening plaintiffs.

*Peter J. Donlin,* for defendant.

Before: D. E. Holbrook, P. J., and Allen and D. C. Riley, JJ.

D. C. Riley, J. Plaintiff and intervening plaintiffs are property owners who appeal an adverse summary judgment upholding defendant Waterford Township's Sewer Operational Ordinance (hereinafter, "the Ordinance"). Each of the plaintiffs owns a home or building which utilizes a septic tank for the purpose of waste disposal. The Ordinance in effect requires plaintiffs on pain of criminal penalties to forgo use of their septic tanks and to tie their structures into the township's sewage disposal system.

Specifically, the Ordinance provides that a property owner pay $600 as a "capital charge", $1400 as a "lateral benefit fee", $15 as a plumbing permit fee, and an unspecified amount as a general permit fee to reimburse defendant for costs incurred in issuing a permit. The capital charge and lateral benefit fee are deferrable over 30 years with down payments of $42 and $98, respectively, plus 5.63 per cent annually compounded interest on the unpaid balance. In addition to the costs imposed by the township, an individual homeowner is required to retain and pay a licensed sewer contractor to lay the pipe from the home to the sewer and to tap into the system. Moreover, disposal of sewage in a manner not contemplated by the Ordinance is punishable by fine of up to $500 or imprisonment for up to 90 days, or both.

1972 PA 288 [MCLA 123.281 *et seq.;* MSA 5.2769(151) *et seq.],* the enabling legislation on which the Ordinance is based, empowers a governmental agency such as a township to enact an ordinance requiring connection of any "[s]tructures in which sanitary sewage originates" to any available public sewage disposal system. MCLA

123.283(1); MSA 5.2769(153)(1). While Act 288 specifically permits a governing body to seek enforcement of its ordinance by injunctive means, MCLA 123.285; MSA 5.2769(155), the statute does not explicitly authorize criminal penalties. Section 7 of Act 288, however, provides:

"Sec. 7. This act is in addition to and not in limitation of the power of a governmental agency to adopt, amend and enforce ordinances relating to the connection of a structure in which sanitary sewage originates to its public sanitary sewer system." MCLA 123.287; MSA 5.2769(157).

The initial issue on appeal, namely, whether the object of 1972 PA 288 is expressed in its title as required by Const 1963, art 4, § 24, has recently been addressed by a panel of this Court in *Bedford Twp v Bates,* 62 Mich App 715; 233 NW2d 706 (1975). There the Court held, albeit obliquely, that the title-object violation which had rendered Act 288's predecessor statute unconstitutional in *Butcher v Grosse Ile Twp,* 387 Mich 42; 194 NW2d 845 (1972), had been cured by the Legislature in its enactment of 1972 PA 288. We agree with the conclusion reached in *Bates,* that the Legislature, by requiring sewer connections of structures in which sanitary sewage *originates,* at once rectified the title-object conflict in the prior act and also "avoid[ed] the necessity of individual determinations [of septic-tank seepage] called for under *Butcher, supra".* 62 Mich App at 716.

*Bates, supra,* also resolved another issue raised on this appeal: whether requiring a landowner to foresake an operable septic tank amounts to a taking of property for which compensation is due. The Court in *Bates* held, and we concur, that no right of compensation inures to property owners

who are constrained by ordinance for reasons of public health and welfare to abandon a functional septic tank in favor of a public sewer system. Plaintiffs claim the right to the use of septic tanks as a non-conforming use under the zoning theory of vested rights. See *Fredal v Forster,* 9 Mich App 215, 229–230; 156 NW2d 606 (1967), *DeMull v City of Lowell,* 368 Mich 242, 252; 118 NW2d 232 (1962). Defendant, however, aptly points to *Casco Twp v Brame Trucking Co, Inc,* 34 Mich App 466, 470–471; 191 NW2d 506 (1971), in which this Court distinguished a zoning ordinance where the vested rights rule applies from a regulatory ordinance protecting the public health, safety and welfare. The vested rights rule does not apply to a regulatory ordinance.

Plaintiffs next contend that the Ordinance's criminal provisions exceed the enforcement powers endowed to defendant by the enabling legislation. We do not agree.

" 'It is the commonest exercise of the police power of a State or city to provide for a system of sewers and to compel property owners to connect therewith. *And this duty may be enforced by criminal penalties.'* Hutchinson [v Valdosta,] 227 US 303, 308; 33 S Ct 290, 292; 57 L Ed 520, 523 [(1913)]." *Bates, supra* at 717. (Emphasis added.)

Given the unequivocal language of § 7, evincing an intent within Act 288 to supplement rather than limit defendant's power to "enforce ordinances" relating to mandatory sewer connection, we believe that defendant, a charter township, is equally empowered as are cities to promulgate ordinances in furtherance of the public weal and to impose criminal sanctions for violations

thereof.[1] See MCLA 42.15; MSA 5.46(15) and MCLA 42.21; MSA 5.46(21).

Our inquiry on this issue is not at an end, however, for it appears the $500 fine permitted by the Ordinance conflicts with MCLA 42.21, which provides in part:

"No punishment for the violation of any township ordinance shall exceed a fine of $100.00 or imprisonment for 90 days, or both in the discretion of the court."

Accordingly, we hold that Act 288 does not bar defendant from enforcing the Ordinance by fine or imprisonment but that the penalty imposed may be no greater than that authorized by MCLA 42.21; MSA 5.46(21).[2]

Plaintiffs maintain that defendant invalidly contracted with Oakland County for the financing and construction of the sewer system where affected property owners, who must repay this obligation solely from sewer connection fees, were afforded neither a referendum nor a hearing to contest the transaction. We hold that 1957 PA 185 [MCLA 123.731 *et seq.;* MSA 5.570(1) *et seq.]* permits

[1] Plaintiffs also maintain that the Ordinance's criminal provision impermissibly shifts to the property owner the burden, in a criminal trial, of proving that a particular septic tank functions properly. This argument avails plaintiffs little since it rests on the mistaken premise that 1972 PA 288 requires individual determinations of septic-tank leakage. As already indicated, individual inquiries are not required. In a criminal trial for violation of the Ordinance, the prosecution would have to show a defendant's knowing refusal, after appropriate notice (see MCLA 123.285; MSA 5.2769[155]), to comply with the strictures of the Ordinance.

[2] We are cognizant of MCLA 41.183(1); MSA 5.45(3)(1) which permits a $500 fine for a misdemeanor violation. This provision, however, applies to townships generally whereas MCLA 42.21; MSA 5.46(21) controls charter townships specifically. In the event of conflict between the two provisions, MCLA 42.1; MSA 5.46(1) indicates that the rules relating directly to charter townships shall govern. Hence, MCLA 41.183(1); MSA 5.45(3)(1) is inapposite.

defendant and the county to contract with each other for the financing and construction of defendant's sewer system without being obliged either to submit the question to popular vote or to accord plaintiffs a right to be heard.

Section 12(1) of Act 185 authorizes a county to enter into contracts with municipalities, including charter townships, MCLA 123.731(i); MSA 5.570(1)(i), "for the acquisition * * * of * * * a sewage disposal * * * system". MCLA 123.742(1); MSA 5.570(12)(1). The act requires the municipality to pledge its full faith and credit for the payment of any contractual obligations undertaken and to levy a tax sufficient to extinguish its contractual debt. MCLA 123.742(2); MSA 5.570(12)(2). The municipality may, however, avoid a tax levy if it chooses instead to satisfy the debt by funds raised in any of the following ways:

"(a) By service charges to users of the system or lake improvements.

"(b) By special assessment upon lands benefited.

"(c) *By the exaction of charges for the connection of properties, directly or indirectly, to the system or for the availability of the system to serve properties, directly or indirectly, or at a present or future time.*

"(d) By setting aside any state collected funds disbursed to the municipality and usable therefor.

"(e) By setting aside any other available moneys." *Id.* (Emphasis added.)

Moreover, "[a] municipality may agree to raise *all* or any part of its contract obligation by *any* of the foregoing methods available". *Id.* (Emphasis added.) Clearly, then, the statute supplies a charter township with a considerable measure of flexibility in choosing which method to employ in avoidance of a tax levy and in payment of its debt

to the county. Where, as here, a charter township opts to repay the debt solely by the exaction of sewer tap-in fees, nothing in 1957 PA 185 impedes that decision.

Furthermore, the penultimate sentence of MCLA 123.742(2) puts to rest any contention that township residents have a right to vote either on the wisdom of the county-township sewer contract or on the means by which to repay defendant's debt:

"The various powers in this act granted to any municipality shall be exercised by its governing body."

See also, MCLA 123.731(k); MSA 5.570(1)(k): "'Governing body' means * * * in the case of a charter township, the township board".

Called upon to interpret 1957 PA 185, the Michigan Supreme Court in *Gaut v Southfield,* 388 Mich 189, 201; 200 NW2d 76 (1972), reached the identical conclusion that § 12 of the act reposes with the governing body the decision whether or not to contract with a county for the purpose of municipal improvements. While that case involved provisions under the act dealing with special assessments *(viz.* §§ 12 and 13) rather than sewer connection fees under § 12, its holding is as applicable to the latter as the former since § 12, like § 13,

"* * * does not expressly require any hearings.

* * *

"The legislative purpose to eliminate a formal hearing to air objections to *the making of the improvement itself* is clear.

"There is no constitutional right to a hearing on the necessity of constructing a public sewer.

* * *

"The advantages and disadvantages of the different

permitted approaches are for the governing body of the city to weigh." 388 Mich at 200, 201. (Citation omitted. Emphasis in original.)

Plaintiffs are apparently confused by the provisions of various other enabling acts under which the county and defendant might have proceeded, but did not. Again, the choice of which permitted approach to follow rests with the township board and not the populace. Dissatisfaction with a board decision that does not violate enabling legislation is better remedied by resort to the ballot box than to the courts.

Plaintiffs next assail the lower court's decision granting summary judgment to defendant. On April 25, 1973, plaintiff Renne moved for summary judgment without specifying the grounds under GCR 1963, 117.2 entitling her to this relief. The content of the motion reveals, however, that it should have been labeled as one being brought under GCR 1963, 117.2(3), the absence of material fact. Paragraphs one and two recite that there is no dispute as to certain facts and paragraph three asks the court to take judicial notice of the many "thousands" of nonpolluting septic tanks. The motion goes on to challenge whether the Legislature may declare a functioning septic tank to be a health hazard.

On appeal, plaintiffs seem to argue that if they were not entitled to judgment as a matter of law, the remaining disputed fact questions that prevent them from obtaining judgment as a matter of law would then require a trial on the merits. We believe this argument misses the mark.

Plaintiff Renne's motion essentially challenged the legislative finding that:

"[f]ailure or potential failure of septic tank disposal

systems poses a threat to the public health, safety and welfare; presents a potential for ill health, transmission of disease, mortality and potential economic blight and constitutes a threat to the quality of surface and sub-surface waters of the state." MCLA 123.281; MSA 5.2769(151).

As the present case amply illustrates, this conclusion is one over which reasonable minds might differ. Where this is so, courts should be chary of supplanting the legislative judgment with their own.

" '[I]f the relation between the statute and the public welfare is debatable, the legislative judgment must be accepted', because of the presumption of constitutionality afforded a statute. *Grocers Dairy Co v Dept of Agriculture*, 377 Mich 71, 76; 138 NW2d 767 (1966).

" 'For the state itself to legislate in a manner that affects the individual right of its citizens, the state must show that it has a sufficient interest in protecting or implementing the common good, via its police powers, that such private interests must give way to this higher interest.' *Kropf v City of Sterling Heights*, 391 Mich 139, 157; 215 NW2d 179 (1974)." *People v Poucher*, 398 Mich 316; 247 NW2d 798 (1976).

Since it is beyond our province to quarrel with legislative findings on the dangers of septic tanks, and since GCR 1963, 117.3 expressly permits a trial court to render summary judgment against the movant, we think the lower court's judgment in defendant's favor was proper. That some septic tanks do not leak putrescent waste is not a "material fact" under Rule 117.2(3) given the legislative design of 1972 PA 288 to dispense with individual determinations of seepage. If the Legislature chooses to nip in the bud a potential for disease transmission rather than to utilize curative mea-

sures after the fact, we decline to second-guess its decision.

Plaintiffs also criticize the lower court's decision via summary judgment which rebuffed an equal protection challenge to the statute. Plaintiffs contend that a provision of 1972 PA 288 requiring sewer connection of only those structures located within 200 feet of an available public sewer line, MCLA 123.282(1); MSA 5.2769(152)(1),[3] is arbitrary, irrational and unsupported by a compelling state interest. They argue further that this provision vests inordinate discretionary power in the township board to "gerrymander" the precise location of the public system so as to absolve "certain favored persons" of an obligation to tap into the system.

Neither argument persuades us. In *Manistee Bank & Trust Co v McGowan,* 394 Mich 655, 671; 232 NW2d 636 (1975), the Michigan Supreme Court recently held that where a legislative classification is attacked on equal protection grounds, both the classification itself and the test with which to scrutinize the classification are to be weighed against a "rule * * * of reason":

" ' * * * The Equal Protection Clause, like the Due Process Clause, is a guaranty that controls the reasonableness of governmental action'. The classification must be a reasonable one, and it must bear a reasonable relation to the object of the legislation."

The Court, in *Manistee Bank & Trust, supra,* held that the validity of non-experimental, time-honored legislation, which sets up an explicit ex-

---

[3] " 'Available public sanitary sewer system' means a public sanitary sewer system located in a right of way, easement, highway, street or public way which crosses, adjoins or abuts upon the property and passing not more than 200 feet at the nearest point from a structure in which sanitary sewage originates."

ception to a general rule, should be gauged against a stricter "substantial-relation-to-the-object test". *Id,* see also *Schigur v Secretary of State,* 73 Mich App 239; 251 NW2d 567 (1977). However, with respect to legislation of recent vintage which can fairly be dubbed "experimental", the traditional equal protection test applies. *Schigur, supra,* at 247–248. Under this test, " '[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it' ". *Manistee Bank & Trust, supra* at 668, quoting *Dandridge v Williams,* 397 US 471, 485; 90 S Ct 1153; 25 L Ed 2d 491 (1970).[4]

In light of *Manistee Bank & Trust,* we hold 1972 PA 288 to be experimental legislation which has not "been enforced for a sufficiently long period of time" for "all the rationales likely to be advanced in its support" to have been developed. 394 Mich at 672. We further hold the 200-foot scope of Act 288 to be a reasonable upper limit on the reach of the statute.

In an area where there is a "perceived need for experimentation", the Legislature is not constrained to adopt an all-or-nothing approach; it may instead proceed in piece-meal fashion. *Manistee Bank & Trust, supra,* at 672. Thus, we believe the Legislature could well have decided that the potential menace occasioned by the widespread use of septic tanks is best remedied by a 200-foot limitation "as but the first experimental step in a

[4] This writer questions whether the Court in *Schigur,* though purporting to follow the traditional equal protection test, actually did so. *Schigur* cites *Alexander v City of Detroit,* 392 Mich 30, 35–36; 219 NW2d 41 (1974), as ostensively enunciating the traditional test of equal protection. However, in *Manistee Bank & Trust, supra,* the Supreme Court characterizes the test employed in *Alexander* as "the fair-and-substantial-relation-to-the-object-of-the-legislation test". 394 Mich at 670. *Accord, McKendrick v Petrucci,* 71 Mich App 200, 205; 247 NW2d 349 (1976).

legislative scheme designed eventually to require" the abandonment of all septic tanks, wherever located. *Id.*

With regard to the claim that the location of the public sewer line is susceptible of gerrymandering because of the absence of controlling standards, we point out merely that MCLA 123.282(1); MSA 5.2769(152)(1) by definition confines the location of the line to "a right of way, easement, highway, street or public way". In our view, there is time enough to decide whether a governing body, in fixing the site of a sewer line within these statutory bounds, denies equal protection as applied to a particular aggrieved party.

In sum, we affirm the grant below of summary judgment in favor of defendant, uphold the application of 1972 PA 288 and 1957 PA 185 to the facts herein, and affirm the enforcement of defendant's Ordinance except to the extent that it contradicts MCLA 42.21; MSA 5.46(21).

Affirmed in part; reversed in part.

No costs, a public question being involved.