WASHTENAW COUNTY HEALTH DEPARTMENT v T & M CHEVROLET, INC.

WASHTENAW COUNTY HEALTH DEPARTMENT v FEEMAN

1. STATUTES—MUNICIPAL CORPORATIONS—SEWER SYSTEMS—WORDS AND PHRASES.

The phrases "available public sanitary sewer" and "available public sanitary sewer system" as used in the sewage disposal through public system act both refer to an entire sewer system rather than to any single line which is part of an overall sewer system (MCLA 123,281 *et seq.;* MSA 5.2769[151] *et seq.).*

2. MUNICIPAL CORPORATIONS—STATUTES—SEWER SYSTEMS—LEGISLATIVE INTENT.

An interpretation of the sewage disposal through public system act which would allow one municipality to require and compel a sewer connection to a sewer system owned by another municipality is incompatible with the legislative intent that no local government have control over the sewer system of another municipality (MCLA 123.281 *et seq.;* MSA 5.2769[151] *et seq.).*

3. MUNICIPAL CORPORATIONS—STATUTES—SEWER SYSTEMS—ANNEXATION.

It is neither a violation of the sewage disposal through public system act nor unreasonable for a city to require annexation of township property to the city before the city will allow a connection of the property to the city's public sewer system where (1) the sewer line in question was not built to service the township but was built to service the city, (2) the sewer line passes through the township because the township separates two parts of the city, and (3) the city has a long-established

REFERENCES FOR POINTS IN HEADNOTES
[1] 25 Am Jur 2d, Drains and Drainage Districts § 1.
[2] 56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions §§ 529–571, 573.
[3] 25 Am Jur 2d, Drains and Drainage Districts § 15.
   56 Am Jur 2d, Municipal Corporations, Counties, and Other Political Subdivisions § 67.

policy of requiring annexation as a condition of providing sewer and water services (MCLA 123.281 *et seq.;* MSA 5.2769[151] *et seq.).*

Appeal from Washtenaw, Ross W. Campbell, J. Submitted June 17, 1977, at Lansing. (Docket Nos. 29033, 29034.) Decided September 20, 1977.

Complaints by Washtenaw County Health Department against T & M Chevrolet, Inc., and Gerald D. Feeman and Debra L. Feeman, doing business as Lyle Wheel and Axle Service, for injunctions ordering the defendants to cease and desist from utilizing the present sewage systems in Pittsfield Township and ordering defendants to utilize the available public sanitary sewage system in the City of Saline. Injunctive relief granted, with the circuit court maintaining jurisdiction to insure compliance by the defendants. The defendants filed third-party complaints against the Township of Pittsfield and the City of Saline for damages incurred by defendants and third-party plaintiffs in complying with the orders and for an order compelling the third-party defendants to allow the defendants and third-party plaintiffs to connect to the public sanitary sewage system of the City of Saline. Cross-complaint by third-party defendant Township of Pittsfield against third-party defendant City of Saline for an order requiring the City of Saline either to remove its sewer line from the township of Pittsfield or to provide service on reasonable terms and conditions to those property owners in Pittsfield Township to whom the line is available. The City of Saline was ordered to connect the properties of the defendants to the public sanitary sewage system operated by the City of Saline. The City of Saline appeals. Reversed.

*Allan W. Grossman,* for third-party defendant and cross-defendant City of Saline.

*Reading and Etter,* for third-party defendant and cross-plaintiff Township of Pittsfield.

Before: D. E. HOLBROOK, JR., P. J., and ALLEN and D. R. FREEMAN,* JJ.

ALLEN, J. Third party defendant City of Saline appeals from the May 24, 1976, order of Washtenaw County Circuit Judge Ross W. Campbell.[1] That order directed the city to connect the T & M Chevrolet, Inc., and Lyle Wheel and Axle Service buildings to the city's sanitary sewer even though the two properties are located in Pittsfield Township. This rather unusual situation arose because the sewer line which is owned and operated by the city and which connects two sections of the city passes through the township. (See appendix A.)

The city is willing to provide sewer service to the disputed properties only if those properties are annexed to the city. But the township will not agree to annexation and the property owners have never initiated formal annexation proceedings.

On appeal, the city argues that the trial judge misinterpreted the applicable statutes. All parties agree that this litigation requires an interpretation of 1972 PA 288; MCLA 123.281; MSA 5.2769(151). The trial judge based his order on subsection (1) of § 3 that act which reads:

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] There was some question as to whether the judgment below was a final judgment appealable as of right. The trial judge stated that his decision mooted all other questions. Appellee, while questioning the status of the appeal, does agree that a prompt decision would aid all concerned. We will treat this case as an appeal as of right. GCR 1963, 806.1.

"Sec. 3. (1) Structures in which sanitary sewage originates lying within the limits of a city, village or township shall be connected to any available public sanitary sewer in the city, village or township if required by the city, village or township." MCLA 123.283(1); MSA 5.2769(153)(1).

The judge read this statute as meaning that the city must provide sewer service if the township demands it. On appeal, the city argues that subsection (2), not subsection (1), should control. Subsection (2) of § 3 of the act states:

"Sec. 3. (2) Structures in which sanitary sewage originates lying outside the limits of the city, village or township in which the available public sanitary sewer lies shall be connected to the available public sanitary sewer after the approval of both the city, village or township in which the structure and the public sanitary sewer system lies [sic] and if required by the city, village or township in which the sewage originates." MCLA 123.283(2); MSA 5.2769(153)(2).

This section would require the approval of both the city and the township and would at least arguably allow the city to demand annexation as a condition of providing service.

The definition of "available public sanitary sewer" as used in the two preceding quotations is also important. The phrase is defined in MCLA 123.282(1); MSA 5.2769(152)(1).

"Sec. 2. (1) 'Available public sanitary sewer system' means a public sanitary sewer system located in a right of way, easement, highway, street or public way which crosses, adjoins or abuts upon the property and passing not more than 200 feet at the nearest point from a structure in which sanitary sewage originates."

The act, popularly known as the sewage disposal

through public system law, was enacted in 1972, and has been involved in two appellate decisions; but neither case discussed the questions raised in this appeal. See *Bedford Twp v Bates,* 62 Mich App 715; 233 NW2d 706 (1975), and *Renne v Waterford Twp,* 73 Mich App 685; 252 NW2d 842 (1977). Fortunately, the history of the statute as it moved through the legislative process gives insights into the legislative intent. When first introduced in the House on May 23, 1972, and referred to the Committee on Conservation and Recreation, the bill was House Bill No. 6259. Section 2(1) of the bill stated:

"Structures in which sanitary sewage originates shall be connected to any available public sanitary sewer system."

On June 14, the Committee on Conservation and Recreation reported out a substitute bill entitled Substitute for House Bill No. 6259. The substitute bill replaced § 2(1) with renumbered §§ 3(1) and 3(2) worded as follows:

"Sec. 3. (1) Structures in which sanitary sewage originates lying within the limits of a city, village or township shall be connected to any available public sanitary sewer in the city, village or township.

"(2) Structures in which sanitary sewage originates lying outside the limits of the city, village or township in which the available public sanitary sewer lies shall be connected to the available public sanitary sewer after the approval of both the city, village or township in which the structure and the public sanitary sewer system lies *[sic]."*

On June 29, 1972, the bill was read a second time and on motion of Representative Sietsema § 3(1) was amended by adding thereto "if required by the city, village, or township" and § 3(2) was amended by adding thereto "and if required by the city,

village or township in which the sewage origi-
nates".[2] The bill was adopted by the Senate with-
out further change except for an amendment to
the title not pertinent to the questions raised in
this case.[3]

The trial judge held that § 3(1) governed. That
conclusion is technically defendable given a literal
reading of the section.[4] But when read in context
with the history of the bill and in connection with
§ 3(2) it is clear that the literal interpretation is
inaccurate, strained and awkward. The history of
the bill clearly discloses that the Legislature in-
tended subsection (1) to cover situations where
both the structure from which the sewage origi-
nates and the sewer system lie within the same
municipality and intended subsection (2) to cover
situations where the structure from which the
effluent originates and the sewage system lie in
different units of government. The trial court er-
red by reading a subsection (2) factual situation
into subsection (1). Under the correct interpreta-
tion the word "city" or "township" is consistently
repeated in each of the three places in which the
word appears in subsection (1).[5] Construed in this
manner subsection (1) is consistent, logical and
addresses the problem. But when read literally, it
is both incompatible with the legislative history of

[2] The various amendments referred to above will be found in
Journal of the House, 1972, Vol 3, pp 2247, 2523, and 2552.

[3] Journal of the Senate 1972, Vol 2, pp 1888, 1934, and 1948.

[4] "In accordance with the plain language of statutory provisions
* * * [Sec. 3(1)] Defendants' structures are located within the limits
of a township and the 'available' sewer is in Pittsfield Township.
Therefore, defendants' structures 'shall be connected' to the sewer if
Pittsfield Township requires. Pittsfield Township is willing to so
require in this case." Opinion of Trial Judge, p 5.

[5] For example, assuming that the structure and the sewer both lie
in the city, subsection (1) would read: "structures in which sanitary
sewage originates lying within the limits of a *city* * * * shall be
connected to any available public sanitary sewer in the *city* * * * if
required by the *city.*" (Emphasis added.)

the bill and leads to the troublesome result of allowing Pittsfield Township to determine when properties may connect to the City of Saline sewer. That interpretation would be subject to challenge on constitutional grounds. Const 1963, art 7, § 24; OAG 1965–66, No 4523, p 251 (April 29, 1966). Accordingly we are satisfied that the Legislature did not intend to apply subsection (1) to the present case and that the trial court erred in its ruling on this point.

We now proceed to consider the applicability of subsection (2) to the present case. Again we are confronted by the literal interpretation syndrome. By its terms the subsection applies only when the connecting structure and the available *"sewer"* are in separate municipalities. Does *"sewer"* mean any single line which is part of an overall disposal system or does it mean the main system itself? Literally read it means the former and if this be true, then subsection (2) would not govern since, as disclosed by the map, the two properties involved and the *sewer line* to which they could connect both lie in Pittsfield Township. This is the interpretation made by the trial judge in holding that subsection (2) did not apply. But if "sewer" may reasonably be found to mean sewer system, subsection (2) would apply since the system is in the City of Saline. This is the interpretation urged by the city.

There are indications that the act uses "sewer" and "sewer system" interchangeably. Sections 3(1) and 3(3) both use the key phrase "available public sanitary sewer". But the definition in § 2(1) defines "available public sanitary sewer *system"*. (Emphasis added.) That term is defined as a "sewer system located in a right of way, easement, highway,

street or public way" within 200 feet of the structure in which the sewage originates. A literal reading of the definition would produce an absurd result since an entire system would never be located in a right of way along a single street. The more logical interpretation is that the phrases "available public sanitary sewer" and "available public sanitary sewer *system*" both refer to an entire system. By definition, the system is "available" to a structure if *any part of the system* lies within a right of way and within 200 feet of the structure. This interpretation leads to the conclusion that § 3(2) controls the present case since the structures are in Pittsfield Township and the available *system* is in Saline; even though that part of the system which is "available" to the structures lies in Pittsfield Township. Our interpretation is further supported by § 2(2) which defines a "public sanitary sewer *system*" to mean "a sanitary *sewer* * * * used or intended for use by the public for the collection and transportation of sanitary sewage for treatment or disposal *and owned or operated* by a governmental agency". In the instant case the sewer connected to the treatment plant in the City of Saline.

Further, we call attention to the amendments made by the committee substitute for the original bill. Those amendments indicate a concern by the Legislature that no local government have control over another's sewer system. Unfortunately the construction given the statute by the respected trial court empowers Pittsfield Township to require and compel a connection to a sewer system owned by the City of Saline. Such an interpretation is totally incompatible with the intent of the Legislature as evidenced by the history of the legislation and the wording of the bill as enacted.

Having determined that connections may not be made to a city owned and operated system located in the city without the approval of the city, we now proceed to inquire whether the city may properly condition its approval on annexation to the city of the structures involved. The township argues that it may not since to do so would subvert the primary intent of the bill which is the protection of the public health by mandating connections to an available system. Furthermore, says the township, the imposition of an annexation requirement permits a city to accomplish through the back door that which is permitted only under certain tightly defined statutory provisions governing annexation. The city argues that the bill imposes no conditions or restrictions on a city's consent but allows the city to refuse for any reason whatsoever; that if the city may refuse for any reason, it may certainly refuse for reasons of annexation; that, at the time the bill was enacted, the Legislature was well aware of the classic dispute between cities and townships over annexation and therefore would have precluded a city from making annexation a condition of sewage connection had the Legislature so intended. Finally, argues the city, its annexation policy in the area involved was not new but had been the policy of the city long before 1972 PA 288 was enacted.

The issue raised is troublesome. There well may be situations where a city's demand for annexation would be unreasonable or would permit pollution from a large number of structures. For example, this could occur where a city which had consistently furnished sewage services to a township area abruptly changes its position and demands annexation before allowing connections from recently constructed homes or buildings located within 200

feet of the existing sewer line. However, that is not the situation presented in the instant case. As is depicted in the map attached and as noted earlier, the sewer line in question[6] does not terminate in the township but only connects two sections of the city. The township is a hole in the city doughnut; an atypical situation. No area of the township was ever provided or promised sewer services by the city. Hence, no service is being cut off and no implied promise has been breached. Only two structures are involved and thus no great threat to the public health is involved.

Likewise, the city policy is not new nor is it being employed by the city to accomplish that which the city had not successfully attempted before. In 1965 the Ford Motor Company purchased a large parcel of land in Pittsfield Township situated along the northeast city limits as shown in the map attached. The company requested city sewer and water service which the city agreed to provide if the parcel would be annexed to the city. The township then released the parcel for annexation to the city and a sewer line was constructed. The line runs 1800 feet northeasterly on Michigan Avenue from the easterly city limits to a point just south of the Ford Motor Company property and thence under the street to the Ford property thus connecting two parts of the city. It is this sewer line which is the subject of the present dispute.

In view of the factual situation presented in the instant case and assuming, *arguendo,* that there may be certain other situations where a city may not require annexation as a condition of approval to connection, we do not consider the demand for

---

[6] The sewer line appears as the dotted line in the lower right corner of the map and is clearly marked thereon as Saline City Sanitary Sewer Line.

annexation by the City of Saline in this case to be unreasonable or a violation of the statute. For us to hold otherwise would be to rule that a city may be required to provide sewer services if the township requires it and even if the city does not give its approval. This is clearly in violation of the express language of the statute. We decline to go so far as to hold that in every instance 1972 PA 288 permits a city to require annexation before it will approve a connection to its sewage system. That issue awaits a future case on appropriate facts. But in the case before us, after balancing the conflicting interests of the statutory purpose of protecting the public health against the unconditional statutory language that the municipality owning and operating the system must give its consent, and bearing in mind that the sewage line in question was not built to service the township but services two parts of the city, and given the fact that the city had a long-established policy of requiring annexation as a condition of providing sewer and water services, we hold that the order entered by the trial court May 24, 1976, was in error.[7]

Reversed. No costs, a public question being involved.

---

[7] We express no opinion on the merits of the cross-claim filed by Pittsfield Township or on any other issues not raised by the appeal pleading. The cross-claim alleges that the City of Saline acted illegally by installing the arm of its sewer across a part of the township without first obtaining the township's approval.